GUOFENG LI, ESQ. (CA343936)
VIP LAW GROUP PC
Email: LAWYERLI.CHRIS@GMAIL.COM
855 CONKLIN STREET STE S
FARMINGDALE, NY 11735
Telephone No.: (516) 808-6266
Attorney for Petitioner Liang Liang

# UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

**LIANG LIANG**,

*Petitioner-Plaintiff*,

*v.*

**MARKWAYNE MULLIN** , Secretary of the U.S. Department of Homeland Security, in their official capacity;

**TODD BLANCHE** , Attorney General of the United States, in their official capacity;

**DAVID VENTURELLA** , Acting Director of U.S. Immigration and Customs Enforcement, in their official capacity;

**THOMAS GILES** , Los Angeles ICE Field Office Director, in their official capacity;

**PATRICIA M. COLBERT** , Warden of ADELANTO ICE PROCESSING CENTER, in their official capacity.

*Respondents-Defendants.*

Case No.:

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. § 1226(a); COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Petitioner Liang Liang ("Petitioner") is a native and citizen of China who was inspected and lawfully admitted to the United States on a B2 visa on July 13, 2021, through Los Angeles International Airport (LAX). She applied for asylum on May 11, 2022 and that application has been pending ever since. She has no criminal history of any kind.

2. On October 21, 2026, officers of U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner in the security screening line at John Wayne Airport (SNA) in Orange County, California, before she boarded a domestic flight to Seattle, Washington, not at a port of entry and not in connection with any attempt to enter the country. She has been held at ADELANTO ICE PROCESSING CENTER ever since. Respondents have never served Petitioner with a Form I-286 Notice of Custody Determination, and no neutral adjudicator has ever considered whether her detention serves any legitimate purpose.

3. Because Petitioner was admitted, her detention is governed by 8 U.S.C. § 1226(a), the discretionary detention statute under which a noncitizen may be detained or may be released on bond or conditional parole. She is not an "applicant for admission" under 8 U.S.C. § 1225(a)(1), is not "seeking admission" under § 1225(b)(2)(A), and is not subject to any mandatory-detention provision. Nevertheless, Respondents continue to detain her, and no neutral adjudicator has determined whether her detention is justified.

4. That detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Petitioner has complied with every step of the lawful immigration process; continued confinement without a custody determination serves no purpose that the law recognizes.

5. Accordingly, to vindicate her statutory and constitutional rights, Petitioner respectfully requests that this Court issue a writ of *habeas corpus* ordering her immediate release from ICE custody under reasonable conditions of supervision. In the alternative, Petitioner requests that the Court at least require Respondents to provide a prompt individualized hearing before a neutral adjudicator where the government must justify any further detention. Petitioner also seeks declaratory and injunctive relief as appropriate.

## JURISDICTION

6. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.

7. This Court has habeas jurisdiction under 28 U.S.C. § 2241 (*habeas corpus*), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202. Petitioner is "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) because she is physically detained by Respondents at ADELANTO ICE PROCESSING CENTER. Petitioner does not challenge any removal order, nor the commencement or adjudication of her removal proceedings; 8 U.S.C. § 1252(b)(9) and (g) therefore pose no bar. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). Nor does 8 U.S.C. § 1226(e) bar this action. That provision precludes review only of discretionary custody judgments; it does not bar a challenge to the extent of the Government's detention authority under the statutory framework as a whole, or a constitutional challenge to the procedures by which detention is imposed. *Id.* at 295–96; *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

## VENUE

8. Venue is proper in the CENTRAL DISTRICT OF CALIFORNIA because Petitioner is detained at ADELANTO ICE PROCESSING CENTER in this District. In habeas cases the district of confinement is the proper venue for a challenge to present physical custody, and the immediate custodian is the warden of the facility where Petitioner is held. *Rumsfeld v. Padilla*, 542 U.S. 426, 442-47 (2004). Additionally, pursuant to 28 U.S.C. § 1391(e), this is an action against officers of the United States in their official capacities, and a substantial part of the events giving rise to the claim, namely Petitioner's detention and ongoing custody, is occurring in this District. Venue is therefore proper in this Court. Because Petitioner is confined in San Bernardino County, this action is properly assigned to the Eastern Division of this District.

## PARTIES

9. Petitioner is a native and citizen of China (A-Number 240789773). Petitioner is presently detained at the direction of Respondents at ADELANTO ICE PROCESSING CENTER, 10250 Rancho Road, Adelanto, CA 92301.

10. Respondent MARKWAYNE MULLIN is named in their official capacity as the Secretary of DHS. They are responsible for the administration of the immigration laws. 8 U.S.C. § 1103(a). They routinely transact business in the CENTRAL DISTRICT OF CALIFORNIA and are legally

responsible for Petitioner's detention. As such, they are a legal custodian of Petitioner. Respondent MARKWAYNE MULLIN's address is U.S. Department of Homeland Security, Washington, DC 20528.

11. Respondent TODD BLANCHE is named in their official capacity as the Attorney General of the United States. They are responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review. 8 U.S.C. § 1103(g). They routinely transact business in the CENTRAL DISTRICT OF CALIFORNIA and are legally responsible for Petitioner's detention. As such, they are a legal custodian of Petitioner. Respondent TODD BLANCHE's address is 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

12. Respondent DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), is named in their official capacity. In this capacity, they are responsible for the administration and enforcement of the immigration laws as exercised by ICE, including the detention and custody of noncitizens. They routinely transact business in the CENTRAL DISTRICT OF CALIFORNIA and are legally responsible for Petitioner's detention. As such, they are a legal custodian of Petitioner. Respondent DAVID VENTURELLA's address is 500 12th Street, S.W., Washington, D.C. 20536.

13. Respondent THOMAS GILES is the Field Office Director of the ICE Enforcement and Removal Operations Los Angeles Field Office, which has jurisdiction over ADELANTO ICE PROCESSING CENTER, and is named in their official capacity. In this capacity, they have direct authority over Petitioner's detention and release and are a legal custodian of Petitioner. Respondent's address is 300 North Los Angeles St., Room 7631, Los Angeles, CA 90012.

14. Respondent PATRICIA M. COLBERT, Warden of ADELANTO ICE PROCESSING CENTER, is named in their official capacity as the warden of the facility where Petitioner is held. In this capacity, they are Petitioner's immediate custodian and a legal custodian of Petitioner. Respondent's address is 10250 Rancho Road, Adelanto, CA 92301.

15. Each Respondent is sued in an official capacity only. Pursuant to Fed. R. Civ. P. 25(d), any successor to a named Respondent is automatically substituted as a party.

## STATEMENT OF FACTS

### A. Petitioner's Lawful Admission, Asylum Application, and Life in the United States

16. Petitioner Liang Liang is a native and citizen of China. She is a woman who lives in Orange County, California. On July 13, 2021, she was inspected and admitted to the United States at Los Angeles International Airport (LAX). Her Form I-94, number 628850760A2, reflects that she was admitted until January 12, 2022. Ex. E.

17. Petitioner left China because of persecution under China's family planning policy and because of her political opinions. In 2009, a few months after giving birth to her son, she refused family planning officials' order to have an intrauterine device inserted. When she became pregnant again later that year, officials forcibly took her to a hospital, where she was made to undergo an abortion that caused lasting harm to her health. Later, after she posted comments online supporting Hong Kong and criticizing the Chinese Communist Party, local police came to her home, admonished her, and required her to sign a written pledge to stop; in May 2020 she was diagnosed with depression. In November 2021, while she was in the United States, she posted criticism of China's COVID-19 policies. Her social-media accounts were shut down, and police warned her then-husband in China that she must return to China to face punishment. She then applied for asylum.

18. On May 11, 2022, 302 days after her entry and before one year had passed, Petitioner filed a Form I-589 application for asylum with U.S. Citizenship and Immigration Services (USCIS). The receipt number is ZLA2252072490. USCIS issued a Form I-797C receipt notice dated August 11, 2022. Ex. F. The Department of Homeland Security issued a Form I-797C appointment notice for biometrics dated August 12, 2022. Ex. G. USCIS approved her Form I-765 application for employment authorization by a Form I-797 notice dated January 10, 2023. Ex. H. USCIS issued her an Employment Authorization Document (Form I-766), Category C08, valid from January 9, 2023 to January 8, 2025. Ex. A. Petitioner's asylum application remains pending. Petitioner is awaiting a first hearing before the immigration court.

19. Petitioner holds a California driver license issued by the California Department of Motor Vehicles and dated November 17, 2022. Ex. B. She has maintained a fixed residence in the United States.

20. Petitioner has two children. Her daughter, M.G., was born in Los Angeles County, California, in 2019, is a United States citizen, and is in second grade. Her county Certificate of Live Birth is dated April 26, 2019. Ex. C. Her son, H.L., was born in 2009 and is in the twelfth grade. His Chinese birth certificate was issued on May 14, 2009, and a household-registration certificate issued by the local police station on March 9, 2021 confirms his change of name; certified English translations are

included. Ex. D. H.L. is seventeen years old and is the son of Liang Liang (A# 240-789-773). Ex. N (H.L. Decl.) ¶ 1. H.L. lives at 246 Harringay in Irvine, California, is a senior at Portola High School, and asks the Court to release his mother. Ex. N (H.L. Decl.) ¶¶ 2–4. H.L.'s Portola High School student identification card for the 2026-2027 school year confirms that he is in the twelfth grade. Ex. M. Petitioner is divorced. M.G.'s father, Petitioner's former husband, has returned to China. She has been raising the children on her own in the United States.

21. Petitioner's fiancé, Frank Sowell, is a United States citizen and a military veteran. He served in the military for more than twenty years. He has provided a letter of support and a declaration under penalty of perjury dated October 26, 2026. Ex. O.

22. Petitioner began working in housekeeping in January 2023, after she received her employment authorization card. On March 29, 2023, she formed Top Home Service LLC, which was later renamed Little Aunt Living Solutions LLC. She is the company's owner. She communicates with clients, schedules employees' work, and is the central person in the business. The company provides moving services through outside vendors, organizing and cleaning services, and housekeeping services for client households. It maintains accounts on Xiaohongshu and Instagram where it shares its work. Petitioner can return to this work upon release and the renewal of her employment authorization.

23. Petitioner has reported her income to the Internal Revenue Service, listing her two children as her dependents. Her Forms 1040 for tax years 2023, 2024, and 2025 are in the record. Exs. I, J, K.

24. Petitioner attends Saddleback Church and goes to worship services every Sunday. She was baptized there in April 2026, before Easter. Ex. L.

25. Petitioner has no criminal arrests, no convictions, and no in-custody disciplinary record.

**B. Petitioner's Arrest and Detention**

26. On October 21, 2026, Petitioner was traveling to Seattle, Washington, for work. She was standing in the security screening line at John Wayne Airport (SNA), 18601 Airport Way, Santa Ana, California 92707, to board a domestic flight from Orange County to Seattle. While she was in line, ICE officers approached and asked whether she was "Lin Lin." Her name is Liang Liang, and the officers' pronunciation was inaccurate, so she answered that she was not. Shortly afterward, ICE officers approached her again and showed her a photograph. They asked whether she was the person in the photograph, and she said she was.

27. The officers directed Petitioner to leave the screening line and step aside for questioning. They told her that her immigration status had expired. The officers did not show her an arrest warrant or any identification. They then took her into custody. Petitioner cooperated fully and did not resist. ICE initiated the arrest. Petitioner was arrested on a domestic flight itinerary inside the United States, not at a port of entry and not during inspection on arrival from abroad.

28. Petitioner is now held at the Adelanto ICE Processing Center. This is her first and only period of immigration detention. She has been detained since October 21, 2026. She is housed in a large room with more than one hundred other people. She is extremely anxious because her children have no parent at home. As their only parent in the United States, she had been raising them alone.

29. Petitioner's detention has left her household without a parent and without income. After her arrest, H.L., a seventeen-year-old high school senior, was the only person at home with his seven-year-old sister. Because he could not care for her while attending school, M.G. is temporarily staying with family friends, who drive her to and from school. Ex. N (H.L. Decl.) ¶¶ 27–28. Petitioner's work supported the family, and since her arrest the household has had no income. Id. ¶ 29. The family's rent of $4,500 per month is due by November 1, 2026. On October 26, 2026, the landlord sent a notice demanding payment. H.L. does not have the money to pay the rent, and Petitioner also has an outstanding car loan. Id. ¶ 30. H.L. fears that the family will lose its home if Petitioner is not released. Id.

30. Petitioner has not received any bond hearing or other individualized custody review. Respondents have not served her with a Form I-286 Notice of Custody Determination and have not identified the statutory basis on which they hold her. Petitioner is awaiting a first hearing before the immigration court.

31. If released, Petitioner would return to her home at 246 Harringay, Irvine, California 92618, where she lives with her two children. This is the address on her driver license and on her USCIS notices. Exs. B, F, G. Mr. Sowell lives nearby in Tustin and has agreed to help support Petitioner and her children. He has also agreed to take Petitioner to her immigration court hearings, ICE check-ins, and USCIS appointments, and to help her comply with any other conditions imposed by the Court or ICE. He has submitted a declaration under penalty of perjury. Ex. O. Petitioner accepts supervision conditions including telephonic or facial-recognition check-in through SmartLINK, GPS ankle monitoring, periodic in-person reporting to ICE, and curfew or residence restrictions.

## LEGAL FRAMEWORK

### A. The INA's Two Pre-Removal Detention Regimes

32. The Immigration and Nationality Act establishes two distinct regimes governing detention before the entry of a removal order. Section 1225(b) governs "applicants for admission," meaning noncitizens "present in the United States who ha[ve] not been admitted" or who "arriv[e] in the United States." 8 U.S.C. § 1225(a)(1). Within that group, § 1225(b)(2)(A) provides for the detention of an applicant "seeking admission" whom an examining immigration officer determines "is not clearly and beyond a doubt entitled to be admitted." Section 1226, by contrast, governs noncitizens who are already in the United States and who are charged as removable. Under § 1226(a), the Secretary "may" arrest and detain such a noncitizen "pending a decision on whether the alien is to be removed from the United States," and "may" release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2); *Jennings v. Rodriguez*, 583 U.S. 281, 288-90 (2018).

33. A noncitizen detained under § 1226(a) may seek a custody redetermination from an Immigration Judge at any time before a removal order becomes administratively final. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1). At such a hearing the Immigration Judge considers whether the noncitizen presents a danger to persons or property or a risk of flight. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). Only noncitizens described in § 1226(c), those subject to the enumerated criminal and terrorism-related grounds, are excluded from that process. Petitioner is not described in § 1226(c).

### B. An Admitted Noncitizen Is Detained, If at All, Under § 1226(a)

34. "Admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). A noncitizen who was admitted and thereafter remained beyond the authorized period of stay is charged as deportable under 8 U.S.C. § 1227(a)(1)(B), not as inadmissible under 8 U.S.C. § 1182. Such a noncitizen is not an "applicant for admission" under § 1225(a)(1), because admission has already occurred, and is not "seeking admission" under § 1225(b)(2)(A), because admission has already been granted. By the plain terms of the statute, § 1225(b) does not reach a noncitizen who was inspected and admitted, and § 1226(a) does.

35. The agency position asserting mandatory detention under § 1225(b)(2)(A) does not reach Petitioner. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and the ICE guidance it

endorsed, address noncitizens who entered without inspection and are therefore “present in the United States without admission.” By their own terms that reasoning does not extend to a noncitizen who was inspected and admitted at a port of entry and who is charged as deportable under § 1227. Nothing in that decision purports to withdraw an admitted noncitizen from the custody-redetermination process that § 1226(a) and its implementing regulations provide.

36. That distinction is the one the courts of appeals have drawn, on both sides of the division over § 1225(b)(2)(A). The Fifth Circuit sustained mandatory detention only as to noncitizens present without admission, and did so on the express ground that § 1226(a) still governs those who were admitted: “Section 1226(a) undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error.” *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (slip op. at 14); accord *Herrera Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The circuits that rejected that reading confine § 1225(b)(2)(A) to noncitizens seeking entry at the border and hold that § 1226(a) governs those apprehended in the interior. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026). Neither side of that division extends § 1225(b)(2)(A) to a noncitizen who was inspected and admitted at a port of entry. In this Circuit the question is settled. *Rodriguez Vazquez* holds that § 1225(b)(2)(A) reaches noncitizens seeking admission at the border and not those apprehended in the interior, who remain subject to § 1226(a) and eligible for bond, and that holding binds this Court. It controls here a fortiori: it reached that result for noncitizens who entered without inspection, while Petitioner was inspected and admitted at a port of entry, which places her further still from the statute Respondents invoke.

37. The Supreme Court has granted certiorari to resolve that division. *Rhoney v. Barbosa da Cunha*, No. 26-104 (U.S. cert. granted Oct. 1, 2026). The question presented there concerns noncitizens who entered without inspection and were later apprehended in the interior. However the Supreme Court answers it, the answer will not reach Petitioner, who was inspected and admitted at a port of entry: on either side of the division, § 1226(a) governs an admitted noncitizen. Meanwhile, a published Ninth Circuit opinion binds the district courts of this Circuit from the date it is filed,

*Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000), and a grant of certiorari in a case from another circuit does not alter that rule.

38. Whatever deference an agency construction of § 1225(b)(2)(A) might once have commanded, none is owed now. Courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024). On the statutory text, Petitioner's detention is authorized, if at all, only by § 1226(a), together with the custody-review process that section and its regulations provide.

### C. The Due Process Clause Independently Requires an Individualized Custody Determination

39. The Due Process Clause independently requires an individualized custody determination. "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Its protections are strongest for a noncitizen who, like Petitioner, was lawfully admitted and has developed substantial ties to this country. *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77-80 (1976).

40. Civil detention is constitutionally permissible only where it bears a reasonable relation to a legitimate, non-punitive governmental purpose, which in the immigration context means preventing flight and protecting the community, and only where it is accompanied by adequate procedural protections. Zadvydas, 533 U.S. at 690-91; *Foucha v. Louisiana*, 504 U.S. 71, 80-81 (1992); *Demore v. Kim*, 538 U.S. 510, 527-28 (2003). The minimum such protection is an individualized determination, by a neutral decisionmaker, whether those purposes are actually served by detaining the particular person. Foucha, 504 U.S. at 81-83; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

41. The federal habeas statute contains no exhaustion requirement. Exhaustion of administrative remedies in an immigration habeas case is therefore prudential rather than jurisdictional, and is excused where the available remedies are inadequate or ineffective, where pursuing them would be

futile, or where irreparable injury would result from the delay. *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

42. Exhaustion is excused here. Whether Respondents may hold Petitioner without the individualized custody determination that the Immigration and Nationality Act and the Due Process Clause require is a purely legal question. The immigration courts have no special competence to resolve it and no authority to adjudicate its constitutional dimension. Respondents have made no custody determination from which Petitioner could seek review. To the extent Respondents treat Petitioner as subject to mandatory detention under the agency's interpretation of § 1225(b)(2)(A), Immigration Judges are bound to apply that interpretation, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and a request for redetermination would be futile. Respondents may also transfer Petitioner to another facility at any time and without notice; a transfer while an administrative remedy ran its course would separate her from counsel and from her children.

43. Petitioner is detained by ICE at ADELANTO ICE PROCESSING CENTER, 10250 Rancho Road, Adelanto, CA 92301. Every additional day of administrative process is another day of confinement that this Court alone can end, and the resulting harm cannot be remedied later by the immigration courts.

44. Accordingly, exhaustion should be excused, and this Court may reach the merits.

## CLAIMS FOR RELIEF

COUNT ONE
Detention in Violation of the Immigration and Nationality Act
(8 U.S.C. § 1226(a); 28 U.S.C. § 2241)

45. Petitioner realleges and incorporates by reference the preceding paragraphs.

46. Petitioner was inspected and admitted to the United States. She is not an "applicant for admission" under 8 U.S.C. § 1225(a)(1), is not "seeking admission" under § 1225(b)(2)(A), is not an arriving alien, and is not described in § 1226(c). Petitioner's detention pending a decision on removability is therefore governed exclusively by § 1226(a).

47. Section 1226(a) and its implementing regulations entitle Petitioner to an individualized custody determination and to request a custody redetermination before an Immigration Judge at any time before a removal order becomes administratively final. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1).

48. Respondents have never served Petitioner with a Form I-286 Notice of Custody Determination, and have therefore never made the individualized custody determination that § 1226(a) requires in the first instance. No neutral adjudicator has made any custody determination as to Petitioner. To the extent Respondents treat Petitioner as subject to mandatory detention, or otherwise withhold the custody-review process that § 1226(a) provides, they detain her without statutory authority. Petitioner is accordingly in custody "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

COUNT TWO
Procedural Due Process: Detention Without an Individualized Custody Hearing
(Fifth Amendment; 28 U.S.C. § 2241)

49. Petitioner realleges and incorporates by reference the preceding paragraphs.

50. Petitioner has a fundamental liberty interest in freedom from physical confinement, and that interest is at its strongest for a noncitizen who was lawfully admitted. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982). *Under Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the process due turns on that private interest, the risk of erroneous deprivation under the procedures used, and the Government's interest. Each factor points the same way here: Petitioner's liberty interest is at its maximum; the risk of erroneous deprivation under a regime that affords no hearing at all is absolute, because no neutral adjudicator has examined whether detention serves any purpose; and the Government's interest in detaining her is minimal. Due process requires, at a minimum, a prompt hearing before a neutral adjudicator at which the need for Petitioner's detention is actually examined.

51. Due process further requires that, at that hearing, the Government bear the burden of justifying continued civil detention by clear and convincing evidence, and that the adjudicator consider alternatives to detention and Petitioner's ability to pay any bond set. *Addington v. Texas*, 441 U.S. 418, 425-27 (1979); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Singh v. Holder*, 638 F.3d 1196, 1203-05 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d 976, 990-94 (9th Cir. 2017). Placing that burden on the detained noncitizen instead inverts the presumption that attaches to a deprivation of physical liberty.

52. Petitioner acknowledges *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), which held that due process did not require a further bond hearing, with the burden placed on the Government, for a petitioner who had already received a § 1226(a) bond hearing before an Immigration Judge at

which he bore the burden, together with the opportunity for administrative and judicial review. That decision rested on the procedures that petitioner had actually received. Petitioner's circumstances are the opposite: she was lawfully admitted, has no criminal history, and has had no custody hearing of any kind. As applied to her, the *Mathews* factors require that the Government bear the burden.

53. Respondents' detention of Petitioner without any individualized custody hearing, and without the procedural safeguards the Constitution requires at such a hearing, violates the Due Process Clause of the Fifth Amendment.

COUNT THREE
Substantive Due Process: Detention Not Reasonably Related to Any Legitimate Purpose
(Fifth Amendment; 28 U.S.C. § 2241)

54. Petitioner realleges and incorporates by reference the preceding paragraphs.

55. Civil immigration detention is permissible only insofar as it serves the Government's legitimate interests in securing the noncitizen's appearance and protecting the public. Zadvydas, 533 U.S. at 690-91; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003). Detention that is not reasonably related to those purposes, or that is excessive in relation to them, is punitive and violates substantive due process. *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979); *Jones v. Blanas*, 393 F.3d 918, 932-34 (9th Cir. 2004).

56. Petitioner's continued confinement bears no reasonable relation to either purpose. Petitioner is actively pursuing relief from removal: she has an application for asylum pending. Petitioner submitted the application prior to the expiration of the one-year filing bar. Petitioner's conduct to date is consistent with an intention to appear. Petitioner has a residence to return to upon release. Her son and her fiancé, a United States citizen who lives nearby, have undertaken to help ensure her appearance at every hearing and check-in. Exs. N, O. Petitioner accepts supervision conditions including electronic monitoring. Any residual risk is therefore addressed by conditions of release, which Respondents have not shown to be inadequate. Detention that is untethered from the interests it is supposed to serve is punitive in effect, and Respondents may not impose it on Petitioner without an adjudication that it is necessary.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

*a.* Assume jurisdiction over this matter;

*b.* Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause directing Respondents to file a return within three days of service, and set this matter for hearing at the earliest practicable date;

*c.* Declare that Petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or any other provision;

*d.* Declare that Respondents' detention of Petitioner without an individualized custody hearing violates the Immigration and Nationality Act and the Fifth Amendment to the U.S. Constitution;

*e.* Issue a Writ of *Habeas Corpus* ordering Respondents to release Petitioner forthwith under reasonable conditions of supervision;

*f.* In the alternative, order Respondents to provide Petitioner, within seven (7) days, an individualized custody hearing before an Immigration Judge at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk that no condition of release can mitigate, and at which the Immigration Judge considers alternatives to detention and Petitioner's ability to pay any bond; and order that if no such hearing is provided within seven days, Petitioner be released;

*g.* Enjoin Respondents from transferring Petitioner outside the CENTRAL DISTRICT OF CALIFORNIA while this habeas petition is pending;

*h.* Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority;

*i.* Grant any further relief that this Court deems just and proper.

Respectfully submitted on this October 27, 2026,

/s/ Guofeng Li
GUOFENG LI, ESQ. (CA343936)
VIP LAW GROUP PC
Email: LAWYERLI.CHRIS@GMAIL.COM
855 CONKLIN STREET STE S
FARMINGDALE, NY 11735
Telephone No.: (516) 808-6266
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am the attorney for Petitioner Liang Liang and submit this verification on her behalf pursuant to 28 U.S.C. § 2242 because she is detained at ADELANTO ICE PROCESSING CENTER and cannot readily sign this Petition. I have discussed the facts stated in this Petition with Petitioner and have reviewed the records on which it relies. I verify under penalty of perjury under the laws of the United States that the factual statements in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on October 27, 2026.

/s/ GUOFENG LI, ESQ. (CA343936)
GUOFENG LI, ESQ. (CA343936)
Attorney for Petitioner

**CERTIFICATION OF COMPLIANCE WITH FED. R. CIV. P. 5.2**

Counsel certifies that this Petition and the accompanying exhibits have been redacted in accordance with Fed. R. Civ. P. 5.2(a) and Local Rule 5.2-1. Any minor child is identified by initials only; dates of birth are identified by year only; and Social Security numbers and financial-account numbers have been omitted. Unredacted copies are maintained by counsel and will be lodged under seal upon request of the Court.

# INDEX OF EXHIBITS

Exhibit A — Employment Authorization Card (Form I-766), issued by U.S. Citizenship and Immigration Services, for Liang Liang, Category C08, Valid January 9, 2023 to January 8, 2025

Exhibit B — California Driver License for Liang Liang, issued by California Department of Motor Vehicles, dated November 17, 2022

Exhibit C — Certificate of Live Birth for M.G., issued by County of Los Angeles Department of Public Health, dated April 26, 2019

Exhibit D — Birth Certificate (issued May 14, 2009) and Name Change Verification (issued March 9, 2021) of H.L., with Certified English Translations

Exhibit E — Most Recent Form I-94 Arrival/Departure Record for Liang Liang, issued by U.S. Customs and Border Protection, dated July 13, 2021

Exhibit F — Form I-797C Notice of Action (Receipt Notice) for Liang Liang's Form I-589 Asylum Application, issued by U.S. Citizenship and Immigration Services, dated August 11, 2022

Exhibit G — Form I-797C ASC Appointment Notice for Biometrics on Form I-589 Asylum Application of Liang Liang, issued by U.S. Department of Homeland Security, dated August 12, 2022

Exhibit H — Form I-797 Notice of Action Approving Application for Employment Authorization (Form I-765) for Liang Liang, issued by U.S. Citizenship and Immigration Services, dated January 10, 2023

Exhibit I — U.S. Individual Income Tax Return (Form 1040) for Tax Year 2023 of Liang Liang

Exhibit J — U.S. Individual Income Tax Return (Form 1040) for Tax Year 2024 of Liang Liang

Exhibit K — U.S. Individual Income Tax Return (Form 1040) for Tax Year 2025 of Liang Liang

Exhibit L — Photograph of Petitioner's Christian Baptism Ceremony

Exhibit M — Portola High School Student Identification Card for H.L., 2026-2027 School Year

Exhibit N — Declaration of H.L. in Support of *Habeas Corpus* Petition for Release of Mother Liang Liang from ICE Detention

Exhibit O — Letter of Support and Declaration Under Penalty of Perjury from Frank Sowell for Petitioner Liang Liang in *Habeas Corpus* Petition, dated October 26, 2026